IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

PATRICK D. BANKS                                          PETITIONER

V.                          NO: 2:05CV00161 JLH

LINDA SANDERS, Warden,
FCI Forrest City, Arkansas                              RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include

the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## DISPOSITION

Before the Court is the Petitioner's motion for contempt (DE # 14). For the reasons that follow, the Magistrate Judge undersigned recommends that the motion be denied.

On July 14, 2005, Petitioner, who is serving a forty-eight month sentence at the Federal Correctional Institution in Forrest City, Arkansas, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this Court challenging a new rule of the Federal Bureau of Prisons ("BOP") limiting the duration of confinement in a community correction center ("CCC") to "the last ten percent of the prison sentence being served,

not to exceed six months." 28 C.F.R. § 570.21(a). The new rule took effect on February 14, 2005. On September 6, 2005, the Magistrate Judge undersigned found that the February 2005 Rule was invalid and recommended to Judge Holmes that Petitioner's habeas corpus petition be granted. On September 23, 2005, Judge Holmes, adopting the Magistrate Judge's recommended disposition, entered an order and judgment directing the Respondent, Warden Linda Sanders, to "(a) consider, within twenty days and in good faith, transferring Petitioner to a CCC for the last six months of his sentence in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 Policy[1]; and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable, not to exceed six months."

On October 24, 2005, Petitioner filed his motion for contempt requesting that this Court find Ms. Gwendolyn Brown, a Case Manager at the Federal Correctional Complex ("FCC"), Forrest City, in contempt of court for failing to comply with Judge Holmes' order of September 23, 2005. In support of his motion, Petitioner alleges, *inter alia*, that on September 15, 2005, he gave Ms. Brown a copy of the "court's decision" regarding his CCC placement. He alleges that on September 22, 2005, Ms. Brown told him that the halfway house (in Memphis, Tennessee) was full and that regardless of the Court's ruling, he was not getting the full six months "because of that." He alleges that

---

[1] The December 2002 Policy, like the February 2005 Rule, limited the duration of confinement in a CCC to the last 10% of the prison sentence, not to exceed six months.

he asked Ms. Brown if he could go to the halfway house in Little Rock since it had bed space and that she replied, "By you trying to manipulate the system to get the full 6 months, [you are not] going to get any."

In response to Petitioner's motion, the Respondent has submitted a sworn declaration by Ms. Brown.  In the declaration, Ms. Brown states that Petitioner's claims that she told him that he was not going to get six months CCC placement and that she refused to comply with the Court's order are untrue.  She further states that on September 21, 2005, she reviewed Petitioner's case and requested that his CCC placement date be changed from January 30, 2006, to December 6, 2005.  On the same day, Ms. Brown was informed that the CCC (in Memphis, Tennessee) did not have the available bed space to accommodate the additional time.  Ms. Brown states that on September 29, 2005, Petitioner agreed to go to a different CCC in Little Rock, Arkansas; that on September 30, 2005, the CCM (Community Corrections Manager) was advised that Petitioner had agreed to go to a different CCC;  that on October 5, 2005, she and other unit staff were advised that the CCC in Little Rock had available beds; and that on October 5, 2005, Petitioner's CCC placement request was moved to the CCM for Little Rock.  Ms. Brown states that on November 2, 2005, she requested an update regarding Petitioner's CCC placement and that she was advised that his CCC referral packet had been forwarded to the South Central Region to complete the transfer to the CCC in Little Rock.   Brown further states that she is currently awaiting a response from the CCM and CCC contractor in Little Rock regarding Petitioner's transfer date.  Finally, Ms. Brown states that Petitioner has been recommended for six

months of CCC placement (December 9, 2005, to June 6, 2006).

To her declaration Ms. Brown has attached e-mails which substantiate her statements.  In an e-mail dated September 21, 2005, Ms. Brown stated to Kelly Boyle, an Administrator at the CCM's Raleigh/Nashville Management Center, that in light of a recent court order in favor of Petitioner's receiving six months of CCC placement, the BOP was requesting that Petitioner's CCC placement date be changed to December 6, 2005, from January 30, 2006.  In another e-mail dated September 30, 2005, Sarah Culbertson, a Case Manager at the FCC, Forrest City (Satellite Camp), stated to Mr. Boyle that in light of a recent court order in favor of Petitioner's receiving six months of CCC placement, the BOP was requesting that Petitioner's CCC placement date be changed so that he could receive as much placement as possible.  In an e-mail dated November 2, 2005, Ms. Brown asked Kelly Boyle about the disposition of Petitioner's change in CCC placement.  On November 2, 2005, Boyle replied that the packet had been sent to the "SCR."

Pursuant to BOP policy, the unit team at the prison generates a CCC placement recommendation after a program review which is normally held 11 to 13 months before an inmate's probable release date. BOP P.S. 7310.04 ¶ 12; Kelly v. Nash, 2005 U.S. Dist. LEXIS 24695 at 7 n. 2 (D.N.J. Oct. 18, 2005). According to BOP policy, the recommendation for CCC placement is to be based on "assessments of [an] inmate['s] needs for services, public safety, and the necessity of the [BOP] to manage its inmate population responsibly." BOP P.S. 7310.04 ¶ 9. "A number of factors must be weighed to determine the length of CCC placement for inmates, including their individual needs

and existing community resources." Id.   In conducting its review, the unit team considers "the inmate's current offense behavior, institutional adjustment, prior criminal record and proposed release plans. . . [,] [h]is overall ability to successfully transition into the community . . ., his medical needs, his ability to find employment, his financial resources, and family ties." Kelly v. Nash, 2005 U.S. Dist. LEXIS 24695 at 7 n. 2.  After review, a referral package is completed, which includes any relevant medical and psychological information, classification materials, and a recommended CCC placement date or range (such as 60 to 90 days in a CCC). Id.; BOP P.S. 7310.04 ¶ 12. The referral package is then processed through internal channels at the prison, which include the Inmate Systems Manager, the Case Management Coordinator, the Associate Warden of Programs, the Executive Assistant, and the Warden. Kelly v. Nash, 2005 U.S. Dist. LEXIS 24695 at 7 n. 2.   After review by the appropriate personnel, the Warden approves or rejects the package. BOP P.S. 7310.04 ¶ 12. If the Warden approves the package, the official approval is a written document called an "Institutional Referral for CCC Placement." Kelly v. Nash, 2005 U.S. Dist. LEXIS 24695 at 7 n. 2; BOP P.S. 7310.04 ¶ 12.  Upon approval, the unit team forwards the referral package and appropriate attachments to the CCM.  BOP P.S. 7310.04 ¶ 12.  "Upon receiving a completed CCC referral package, the CCM shall expedite one copy to the appropriate CCC, accompanied by a cover memorandum recommending a placement date and listing any special program requirements.  The CCM shall indicate a specific placement date based upon known resources." BOP P.S. 7300.09 § 5.2.2.  CCC staff is required to notify the CCM in writing of acceptance or rejection. BOP P.S. 7310.04

¶ 12; BOP P.S. 7300.09 § 5.2.2.

The FCC at Forrest City has an established procedure in place to comply with court orders such as the one in this case entered by Judge Holmes on September 23, 2005. See Dishinger v. Sanders, No. 2:05CV00100 GH/JFF, recommended disposition at 7 (E.D. Ark. Nov. 30, 2005).   Pursuant to this procedure, Fletcher Jackson, an Assistant United States Attorney, upon receiving a court order, sends the order via facsimile to James Crook, an attorney employed by the BOP at the Consolidated Legal Center in Oklahoma City, Oklahoma.   Mr. Crook then sends a copy of the order via facsimile to the prison.  The copy of the order is forwarded to the appropriate Case Manager at the prison for review. The Case Manager then typically makes a recommendation to the CCM that the prisoner be given additional CCC time.  Warden Linda Sanders does not personally participate in this process.

Civil contempt proceedings are "brought to enforce a court order that requires [a party] to act in some defined manner." Mercer v. Mitchell, 908 F.2d 763, 768 (11th Cir. 1990); Chairs v. Burgess, 143 F.3d 1432, 1436 (11th Cir. 1998).  A party seeking a civil contempt order bears the burden of showing by clear and convincing evidence that the person alleged to be in contempt violated a court order. Chicago Truck Drivers Union Pension Fund v. Brotherhood Labor Leasing, 207 F.3d 500, 504-05 (8th Cir. 2000); Jakes, Ltd., Inc. v. City of Coates, 356 F.3d 896, 899-900 (8th Cir. 2004).

Gwendolyn Brown, a Case Manager at the FCC at Forrest City, is not a party to this action.  While a nonparty may be held in civil contempt where he or she "aids or abets a named party in a concerted violation of a court order," or is "legally identified"

with a named party who is in violation of the order, <u>Chicago Truck Drivers Union Pension Fund</u>, 207 F.3d at 507, the documentation submitted by Ms. Brown clearly shows that she did not violate the Court's order of September 23, 2005, and Petitioner has submitted no evidence demonstrating that Ms. Brown aided or abetted Warden Sanders or an agent of Warden Sanders in a concerted violation of the order or is legally identified with any person who has violated the order.  Ms. Brown took action consistent with BOP policy and this Court's order by recommending to the CCM that Petitioner's CCC placement date be changed to December 6, 2005, so that he would get six months in a CCC and by following up on the status of Petitioner's CCC placement.  Sarah Culbertson, a Case Manager at the FCC at Forrest City, also took action consistent with BOP policy and this Court's order of September 23, 2005, by requesting that Petitioner's CCC placement date be changed so that he could receive as much time in a CCC as possible.  Ms. Brown is currently awaiting a response from the CCM and CCC contractor in Little Rock regarding Petitioner's transfer date.

In conclusion, the Magistrate Judge recommends that Petitioner's motion for contempt be denied.

THEREFORE, the Magistrate Judge recommends that Petitioner's motion for contempt be denied.

Dated this 1st day of December, 2005.


_____/s/ John F. Forster, Jr._____
UNITED STATES MAGISTRATE JUDGE